FILED '09 JUL 17 14:41 USDC-ORM

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

GRACIELA S. BARRERA,

      Plaintiff,

         v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

      Defendant.

Civil No. 08-826-CL

REPORT AND RECOMMENDATION

CLARKE, Magistrate Judge.

Plaintiff Graciela S. Barrera brings this action pursuant to section 205(g) of the Social

Security Act, as amended (Act), 42 U.S.C. §§ 405(g), to obtain judicial review of the

Commissioner's final decision denying plaintiff's applications for disability benefits and

supplemental security income benefits. For the reasons explained, the decision of the

Commissioner should be reversed and remanded for further proceedings .

## **BACKGROUND**

Plaintiff applied for benefits alleging disability commencing December 5, 2003. Her

applications were denied. Plaintiff requested a hearing, which was held before an Administrative

Law Judge (ALJ) on May 1 and December 5, 2006. Plaintiff, represented by counsel, appeared

and testified as did a vocational expert. On December 14, 2006, the ALJ rendered an adverse decision. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (and authorities cited).

At the time of plaintiff's supplemental hearing when vocational expert testimony was taken and the ALJ's decision, plaintiff was fifty-two years old. Plaintiff has completed high school and two years of college. Plaintiff has past relevant work experience as a fast food worker, file clerk, and security officer. Plaintiff alleges disability as of December 5, 2003, based upon history of kidney cancer, kidney failure and pain, and upper/lower back pain and neck pain. The relevant medical evidence is discussed below.

## STANDARDS

This Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). The Court considers the record as a whole, and weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858

n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence, Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the Court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the

3 - REPORT AND RECOMMENDATION

present case, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 5, 2003. (Tr. 19.)

In step two, the Commissioner determines whether the claimant has "a medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that plaintiff's chronic low back pain constitutes a severe impairment. (Tr. 19-20.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (Tr. 20-21.)

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work." If the claimant is so able, then the Commissioner finds the claimant "not disabled." Otherwise, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week. Social Security Ruling (SSR) 96-8p. The RFC is based on all relevant evidence in the case record, including the treating

physician's medical opinions about what an individual can still do despite impairments. Id. In

this case, the ALJ found that plaintiff retains an RFC to perform medium level exertional work,

but that her RFC is reduced by nonexertional limitations:

> to lift and carry twenty-five pounds occasionally and ten pounds frequently.
> During an eight-hour day, she can sit, stand and walk for up to six hours.
> Furthermore, she is limited to only rare climbing and occasional balancing,
> stooping, kneeling, crouching and crawling. Finally, the claimant should avoid
> concentrated exposure to extremes of heat and cold, and to fumes, smoke, dust,
> etc.

(Tr. 21-22.) The ALJ found that plaintiff was capable of performing her past relevant work as a

fast food worker, file clerk, and security officer. (Tr. 22.) However, the ALJ also addressed the

step five inquiry.

In step five, the burden is on the Commissioner to establish that the claimant is capable of

performing other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20

C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner fails to meet this burden, then the

claimant is deemed disabled. Here, the ALJ found in the body of his decision that, considering

Dr. Harris' RFC opinion in its entirety, see infra, and considering plaintiff's age, education, past

relevant work experience, and this residual functional capacity, plaintiff was capable of making a

successful adjustment to work that exists in significant numbers in the national economy as

identified by the vocational expert. (Tr. 22-23.) Therefore, the ALJ found that plaintiff was not

under a disability. (Tr. 17, 23.)

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is not supported by

substantial evidence and contains errors of law. Plaintiff contends that (1) the ALJ erred by

5 - REPORT AND RECOMMENDATION

improperly rejecting the opinion of an examining physician, Dr. Harris; (2) the ALJ erred by failing to fully develop the record by not reopening the record to consider new evidence in the form of a questionnaire completed by Dr. Chapin; and Dr. Chapin's questionnaire plus other new evidence submitted to the Appeals Council warrants a finding of disability or remand; (3) the ALJ erred by improperly rejecting her testimony; and (4) the ALJ erred by failing to proffer a complete and proper hypothetical, and failing to sustain his burden at step five of the analysis.

**Physician's Opinion - Dr. Harris**

Plaintiff asserts that the ALJ erred by rejecting Dr. Harris's opinion concerning her limited ability to stand and walk for up to two hours in an eight-hour workday without giving any reason. Defendant contends that the ALJ properly considered the medical record and assessed that plaintiff had greater walking/standing abilities than found by Dr. Harris.

Generally, the Commissioner gives more weight to the opinion of a treating source or examining source than to a source who has not treated or examined a claimant. 20 C.F.R. §§ 404.1527(d)(1)(2), 416.927(d)(1)(2); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). A treating physician is one who is employed to cure. Magallanes, 881 F.2d at 751. His opinion is given more weight because he has a greater opportunity to know and observe the patient. Id. Controlling weight will be given to a treating physician's opinion on the issues of the nature and severity of a claimant's impairment(s) if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "The treating physician's opinion is not,

6 - REPORT AND RECOMMENDATION

however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989); 20 C.F.R. §§ 404.1527(e), 416.927(e); see also Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's opinion, and that opinion is not contradicted by another doctor, he must set forth clear and convincing reasons for doing so. Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984). If a treating or examining physician's opinion is contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for disregarding the opinion of the treating or examining physician. Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th Cir. 1996). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, then stating his interpretation, and making findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986); Rodriguez, 876 F.2d at 762. Further, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester, 81 F.3d at 830.

Plaintiff saw James Harris, M.D., M.S.P.H., on May 31, 2006, for a consultative examination. Plaintiff's primary problem was low back pain. She has had back problems since a nephrectomy in 1992 and has had constant back pain over the past few years. Pain was worse with standing or prolonged sitting. Reports from Cascade Occupational Clinics available to Dr. Harris showed diagnoses of lumbar strain, and thoracic and cervical strains. On physical examination, Dr. Harris noted that plaintiff was overweight and walked slowly, with an abnormal

gait, and a slight limp. Neck/cervical extension was about fifty percent of normal. On lumbar examination, plaintiff had eighty percent normal flexion, extension and side bending; "Extension is the most uncomfortable for her. Sitting straight leg raise is to 85 degrees. Supine straight leg raise is to 70 degrees bilaterally." (Tr. 202.) Relevant to this decision, Dr. Harris's impression was chronic daily low back pain. Dr. Harris stated that plaintiff was experiencing frequent exacerbations of low back pain and the medical file documented at least one episode of work related low back pain. He stated: "At this point, I am at a loss to explain the cause of her back pain-- there are no imaging studies in the file for review." (Tr. 203.) Dr. Harris stated that plaintiff was not tolerating jobs where there was prolonged standing or heavy lifting. (Tr. 199- 203.) In the attached Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Harris stated that plaintiff could occasionally lift and carry twenty-five pounds; frequently lift and carry ten pounds; and could stand and/or walk at least two hours in an eight- hour workday. He found that her sitting was not affected; and pushing and/or pulling was not affected as long as weight limit was observed. Dr. Harris stated that the medical/clinical findings which supported his conclusion were "Based primarily on her history of recurrent low back strains requiring medical treatment, and symptoms, and deconditioning." (Tr. 205.) Dr. Harris also found that plaintiff could never climb[1] and could occasionally balance, kneel, crouch, crawl ("rare"), and stoop. The medical/clinical findings which supported his conclusion were the reasons above, plaintiff's chronic symptoms (subjective), and repeated work comp claims for work related lumbar strain. As to environmental limitations, Dr. Harris found she was limited as

---

[1] The marking as to the postural limitation of climbing is unclear because it appears that the "X" marking may have been crossed out. However, the "Never" box is the only box marked. (Tr. 205.)

to temperature extremes and as to fumes, odors, chemicals, gases. He stated that plaintiff was not a good candidate for work in an industrial setting. (Tr. 204-07.)

In his decision, the ALJ set out the RFC found by Dr. Harris, but misstated the limitations found by Dr. Harris as to climbing and crawling; he stated that Dr. Harris opined that plaintiff was limited to "'rare' climbing" and occasional crawling. The ALJ found that Dr. Harris's opinions were consistent with the clinical record and accurately described the functional impact of plaintiff's medically determinable impairment, except for Dr. Harris's opinion concerning plaintiff's ability to walk, with which the ALJ stated he "disagrees." (Tr. 22.)

The ALJ gave no reason to reject Dr. Harris's opinion as to plaintiff's limited ability to walk. Defendant's contention that other medical reports supported the ALJ's "assess[ment]" only goes to whether the ALJ must give "clear and convincing" or "specific and legitimate" reasons for disregarding an examining physician's opinion. Here, the ALJ substituted his own opinion for that of Dr. Harris, which he may not do. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) ("the [social security] Hearing Examiner, who was not qualified as a medical expert, should not have gone outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition."). Accordingly, the court finds that the ALJ erred in disregarding Dr. Harris' opinion that plaintiff has the ability to stand or walk for up to two hours. This error is harmless, however, because the ALJ included Dr. Harris's limitations in a hypothetical posed to the vocational expert, see infra, and made a step five determination based on these limitations.

9 - REPORT AND RECOMMENDATION

**New evidence - Dr. Chapin's opinion**

Plaintiff first argues that the ALJ failed to fully develop the record when he failed to reopen the record to receive a questionnaire completed by her treating physician, Dr. Chapin. The record indicates that, on December 7, 2006, two days after the supplemental hearing held on December 5, 2006, plaintiff's counsel wrote to the ALJ requesting that he reopen the record to accept the questionnaire completed by Dr. Chapin and "dated 12/4/06 and received at our office today, 12/7/06."[2] (Tr. 233.)

William C. Chapin, M.D., completed a questionnaire from plaintiff's counsel on December 4, 2006. He indicated he had seen plaintiff on three occasions since late summer 2006 for chronic low back pain. Dr. Chapin indicated that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; she could stand and walk in an eight-hour day "Less than 2 hours out of eight"; and, as to total sitting in an eight-hour day, she "must periodically alternate sitting and standing to relieve pain or discomfort." He indicated that it was medically necessary for plaintiff to lie down during the day and stated that she had to lie down "apparently every 2 hours depending on how much walking." He indicated plaintiff had no significant limitations with reaching, handling, or fingering, but was likely limited with overhead reaching or bending down to reach. Dr. Chapin indicated plaintiff could occasionally engage in climbing, balancing, stooping, and kneeling, and never engage in crouching or crawling. He stated plaintiff has been prescribed medications for her chronic low back pain with the side effect of sedation. Dr. Chapin

---

[2]    Defendant asserts that Dr. Chapin's opinion was submitted two days after the ALJ's decision and, therefore, the ALJ could not have reviewed the late arriving submission. However, as stated, the request by plaintiff to reopen the record was made on December 7, 2006, which was two days after the supplemental hearing and before the ALJ gave notice of his decision on December 14, 2006 (Tr. 15, 23).

indicated that plaintiff's impairment, medications and side effects moderately limited her

concentration, persistence, or pace, and stated "she describes being very limited by her pain." He

also indicated that he expected plaintiff to miss more than two days a month from a simple,

routine sedentary job, based on her prior employment history and her inability to withstand a

three-hour work day at her current employment. (Tr. 234-36.)

In the Ninth Circuit, the ALJ has an "independent '"duty to fully and fairly develop the

record and to assure that the claimant's interests are considered."'" Tonapetyan v. Halter, 242

F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)).

Such a duty exists even where the claimant is represented by counsel. Brown v. Heckler, 713

F.2d 441, 443 (9th Cir. 1983). Further, the ALJ "may also reopen the hearing at any time before

he or she mails a notice of the decision in order to receive new and material evidence." 20

C.F.R. §§ 404.944, 416.1444.

At the initial hearing on May 1, 2006, when the ALJ rescheduled the consultative

examination, he commented on the "significant dearth of information in this file to support

anything." (Tr. 251.) In response, plaintiff's counsel indicated that he and his client would work

on getting records regarding plaintiff's kidney removal and also indicated "We'll see what we can

do" as to other medical records. (Tr. 251-52.) Although plaintiff's counsel had sent the

questionnaire to Dr. Chapin in a letter dated November 16, 2006 (Tr. 234), counsel did not

mention the questionnaire at the supplemental hearing held December 5, 2006. Counsel sent the

questionnaire to the ALJ in a letter dated two days later, on December 7, 2006 (Tr. 233), before

the ALJ issued his unfavorable decision.

Considering the ALJ's stated concern that the medical evidence was lacking; that Dr. Chapin was a treating physician who was seeing plaintiff currently, and that his opinion as to plaintiff's limitations were similar to--and, in some instances, more limited than--those found by Dr. Harris just a few months earlier, Dr. Chapin's opinion was highly relevant. Plaintiff had testified at the supplemental hearing in December 2006 that she had recently begun seeing a doctor at Virginia Garcia Clinic, and she had seen him about three times starting about five months before. She identified him by name as Dr. Chapin. (Tr. 270, 274-75.) Dr. Chapin's opinion supports plaintiff's testimony that she lies down "A lot" during the day because of her back, and other limitations. (Tr. 274.) On this record, it appears that the ALJ should have reopened the hearing as permitted by regulation and considered Dr. Chapin's opinion before rendering his decision.

Plaintiff also contends that the Appeals Council's dismissal of Dr. Chapin's opinion is not supported by substantial evidence. In addition to the questionnaire completed by Dr. Chapin, set out above, Dr. Chapin signed a letter dated January 30, 2007, in which he stated: "The patient Graciela Barrera should be released from her work duties secondary to her chronic back condition." (Tr. 237.) These materials, along with Dr. Chapin's progress notes indicating his ongoing treatment of plaintiff through July 31, 2007, at Virginia Garcia Memorial Health Center (Tr. 238-46) were submitted to the Appeals Council. (Tr. 5-6, 9.) Defendant responds that the new evidence was properly considered and rejected.

In the Ninth Circuit, this Court must consider the entire administrative record, including the decision of the ALJ and the additional material submitted to the Appeals Council, in

12 - REPORT AND RECOMMENDATION

reviewing the Commissioner's finding of not disabled.  Ramirez v. Shalala, 8 F.3d 1449, 1452

(9th Cir. 1993); Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000); Durham v. Apfel, No.

Civ. 98-1422-ST, 1999 WL 778243, at *11-*12 (D. Or. Sept. 22, 1999) (considering the entire

record including the new evidence, citing Ramirez, 8 F.3d 1449); see Hogan v. Apfel, No. Civ.

00-126-HA, 2001 WL 213751, at *3-*4 (D. Or. Jan. 4, 2001) (same).

       In the notice denying request for review, the Appeals Council stated it had considered the

additional evidence but found that it did not provide a basis for changing the ALJ's decision.  The

Appeals Council stated that Dr. Chapin had seen plaintiff "on three occasions at the time of his

report, and refers to subjective complaints."  It also stated that "No further objective medical

findings were provided to support the opinion." (Tr. 6.)  Dr. Chapin was plaintiff's treating

physician at that time and his opinion is entitled to greater weight.  20 C.F.R. §§ 404.1527,

416.927; Lester, 81 F.3d at 930-31.  While it is true that Dr. Chapin refers to plaintiff's

complaints in his questionnaire responses, his progress notes from Virginia Garcia Memorial

Health Center for this time period were also submitted to and considered by the Appeals Council,

which show that Dr. Chapin examined plaintiff and had for his review reports from the

Northwest Occupational Medicine Center in Portland (Tr. 209-11); notes from Dr. Carver in

Lake Oswego (Tr. 208); an evaluation from Dr. Harris from Northwest Occupational Health

Associates (Tr. 199-207, supra); and an x-ray or x-ray report from Cascade Occupational

Medicine Physicians (see Tr. 138-40). (Tr. 245.)  The Ninth Circuit has found that a physician

need not support his or her findings with objective laboratory findings; subjective medically

acceptable clinical diagnoses are sufficient.  Rodriguez, 876 F.2d at 762-63; Montijo, 729 F.2d at

601; see Shore v. Callahan, 977 F. Supp. 1075, 1079 (D. Or. 1997); Embrey v. Bowen, 849 F.2d

418, 422 (9th Cir. 1988). The court finds that these reasons given by the Appeals Council are not specific and legitimate reasons supported by substantial evidence in the record.

**Plaintiff's Testimony**

Plaintiff contends that the ALJ erred by rejecting her testimony without providing clear and convincing reasons. Defendant responds that the ALJ properly rejected plaintiff's subjective allegations.

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen, 80 F.3d at 1281; SSR 96-7p. The first stage is the Cotton test, Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms, evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. See SSR 96-7p. Unless affirmative evidence of malingering is suggested in the record, the ALJ can reject a claimant's symptom testimony regarding the severity of symptoms "only if he makes specific findings stating clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (and cases cited). General findings are insufficient; rather, the ALJ must identify what

14 - REPORT AND RECOMMENDATION

testimony is not credible, and what evidence suggests that the testimony is not credible. Reddick
v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The Commissioner cannot reject a claimant's
symptom testimony solely because it is not fully corroborated by objective medical findings.
Cotton, 799 F.2d 1403.

> In determining a claimant's credibility the Commissioner may consider, for example:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation
> for lying, prior inconsistent statements concerning the symptoms, and other
> testimony by the claimant that appears less than candid; (2) unexplained or
> inadequately explained failure to seek treatment or to follow a prescribed course
> of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility
> of the symptom testimony, the ALJ must also consider the factors set out in SSR
> 88-13. . . . Those factors include the claimant's work record and observations of
> treating and examining physicians and other third parties regarding, among other
> matters, the nature, onset, duration, and frequency of the claimant's symptoms;
> precipitating and aggravating factors; functional restrictions caused by the
> symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284; SSR 96-7p; 20 C.F.R. §§ 404.1529(c); 416.929(c).

Here, plaintiff has produced objective evidence of an impairment which could produce
some degree of the symptoms alleged by her. There is no evidence of malingering in the record.

The ALJ found that, although plaintiff has an underlying medical condition that could
reasonably result in the symptoms alleged if she failed to comply with her medical regimen or
attempted to exceed her residual functional capacity, her allegations as to the intensity,
persistence, and limiting effects of her symptoms are disproportionate and not supported by the
objective medical findings or other corroborating evidence. (Tr. 21.)

At the supplemental hearing, plaintiff testified that, in 1994, following up on major back
pain, she had a kidney removed. She returned to work for about two years but still suffered with
her back. She did not heal properly because of lifting on the job. Plaintiff injured her arm in

15 - REPORT AND RECOMMENDATION

1996-97. She still has problems with her shoulder and can't sleep at night; she might sleep one-and-one-half hours (Tr. 262-64); her sleep is "bad" (Tr. 274). Plaintiff became "Worse yet" after her arm injury. (Tr. 263.) Since her job as a security guard which she held for three to four years, she works jobs for about one to three  months because she "cannot handle the work" because her back won't take it.  Plaintiff can sit for about 45 minutes and then the pain is "excruciating." (Tr. 264.) Sitting is worse than standing and she could not sit for four out of eight hours.  She could stand for one and one-half hours and then the pain would be "excruciating." (Tr. 265.) She could stand for three hours in an eight hour day and would require more frequent breaks after one-and-one-half hours.  She could not stand for four out of eight hours or "You'll see me passing out." (Tr. 265.)  Plaintiff  was currently working at K-Mart for three hours, one day a week; she "constantly" has to sit. (Tr. 265-66, 269. 272.)  She lives alone. She does her own grocery shopping, going twice a month for "very little" at a time; she leans on the cart. (Tr. 271.)  Plaintiff "ha[s] to" lie down during the day; she lays down "A lot" because she's been hurting her back. (Tr. 273-74.)  When she's doing dishes, after twenty minutes, she has to sit or lie down for a few minutes.  On a  scale of one to ten, plaintiff's pain is a nine as the most severe and, generally, her pain is about a three to four. (Tr. 274.)  She takes pain medication. (Tr. 275-76.)  She testified that things have changed drastically in the past eight months and her back "has really gone badly." (Tr. 281.)  Plaintiff described to Dr. Harris in May 2006 a sedentary lifestyle where she reads, watches TV, and tries to keep up on her laundry. (Tr. 201.)

To the extent that plaintiff contends that the ALJ erred in rejecting her testimony because it is not consistent with the medical record, she is correct that this reason may not be the sole

reason for discrediting a claimant's testimony.  See Cotton, 799 F.2d at 1407.  However, the ALJ

gave additional reasons for discrediting plaintiff's testimony.

In his decision, the ALJ found that, although plaintiff has received treatment for some of

her symptoms which would weigh somewhat in her favor, her treatment has been essentially

routine and/or conservative in nature, and has been generally successful in controlling her

symptoms.  (Tr. 21.)  The Ninth Circuit has determined that evidence of conservative treatment is

sufficient to discount a claimant's testimony of the severity of an impairment, Parra v. Astrue,

481 F.3d 742, 750-51 (9th Cir. 2007), cert. denied, ___ U.S. ___, 128 S. Ct. 1068 (2008), and a

good response to treatment supports an adverse credibility finding, see Crane v. Shalala, 76 F.3d

251, 254 (9th Cir. 1996); Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008).  Plaintiff

contends that she did not have insurance and therefore she had been unable to seek medical help

on a regular basis.  There is evidence that plaintiff does not have any insurance.  (Tr. 185, 200,

270.)  There is also evidence that plaintiff sometimes did not fill prescriptions or get prescribed

over-the-counter medications, or continue with physical therapy, because she could not afford to.

(Tr. 128, 131-32, 245.)  The record also shows that plaintiff was prescribed pain medication

following her March 2000 and May 2005 industrial injuries and that she took the medications

prescribed in 2005 (Tr. 152-53, 163, 188, 190); she had had physical therapy in 2005 for her

back injury (Tr. 141-88); and she was taking medication at the time of the hearing (Tr. 275).  It

is not clear on this record that plaintiff did not seek more aggressive treatment because of her

lack of insurance or financial resources.  Cf.  Carmickle, 533 F.3d at 1161-62; Smolen, 80 F.3d

at 1284.  The reason given by the ALJ, on this record, is a clear and convincing reason to

discount plaintiff's testimony.

17 - REPORT AND RECOMMENDATION

The ALJ found that plaintiff described daily activities which were not limited to the extent expected given her complaints of disabling symptoms and limitations. He remarked that plaintiff lives alone, does her own housework, and does her own shopping two times a month. (Tr. 21.) However, plaintiff also testified that she leaned on the cart when she shopped. She did not testify to housework per se, but testified that she did her dishes and had to sit or lie down for a few minutes after about twenty minutes. Although the evidence of plaintiff's activities may be interpreted in a way more favorable to her, the court finds that the ALJ's interpretation, on this record, is a reasonable one and is supported by substantial evidence. See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff contends that the ALJ improperly discredited her testimony because her work activity after the alleged onset date suggests that she still may be capable of performing work on a sustained basis. The ALJ stated: "the record reflects significant, continuing work activity after the alleged onset date. Although that work activity does not constitute disqualifying substantial gainful activity, it does tend to suggest claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis." (Tr. 22.) The record indicates that plaintiff worked after her alleged onset date of December 5, 2003. (Tr. 115, 124.) However, the work history reveals that she worked for only one to five months at a time. (Tr. 115, 264.) She suffered injuries to her back while working during this time. (Tr. 186, 199, 209, 210.) In addition to her job at K-Mart where was working three hours a week, see supra, plaintiff also worked at McDonald's as a cashier for a time. She was sent home from that job after three to four hours of working due to back pain (Tr. 199) and, ultimately, laid off because of

18 - REPORT AND RECOMMENDATION

her inability to stand for prolonged periods (Tr. 201, 269). The court does not agree that this reason constitutes a clear and convincing reason for discrediting plaintiff's testimony.

The ALJ also found that plaintiff's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date, which did not prevent her from working at that time, and strongly suggested they would not currently prevent work. (Tr. 22.) According to plaintiff's work history prior to 2003, she worked at various jobs until 2000. (Tr. 83.) She held the job of security officer the longest, in about 1998, for about three to four years. (Tr. 83, 264.) The record indicates that she held the other jobs listed no longer than nine months. (Tr. 83, 260.) The only medical records from this period are from April-May 2000 when plaintiff sought treatment for an on-the-job injury. At that time, she was assessed with lumbar strain and placed on modified duty. (Tr. 190-94.) There are no other record which show the level of severity of her alleged back impairment. The court finds that this reason is not a clear and convincing reason to discredit plaintiff's complaints.

The ALJ found finally that plaintiff was a poor historian, hesitating for long period before answering a question and requiring prompting for details; her responses while testifying were evasive or vague at times, and at other times were overly-detailed and tangential, all of which left the impression she may have been less than candid. He found that this suggested the information provided by her generally m ay not be entirely reliable. The court has reviewed the testimony given by plaintiff at the first hearing and supplemental hearing and finds that this reason by the ALJ for not fully crediting plaintiff's testimony is clear and convincing and supported by substantial evidence.

19 - REPORT AND RECOMMENDATION

The court has found that not all reasons given by the ALJ for discrediting plaintiff's testimony were proper. However, even though not every reason relied on by the ALJ to discount a claimant's credibility is upheld on review, the credibility determination will be sustained if the determination is supported by substantial evidence. Batson v. Commissioner, Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148. Here, on this record, the court finds that the ALJ's credibility determination is valid; he provided sufficient reasons to discount plaintiff's allegations and substantial evidence supports the ALJ's determination. See Pfeiffer v. Apfel, No. CIV. 99-1526-HA, 2001 WL 204831, at *4 (D. Or. Jan. 29, 2001), aff'd, 47 Fed. Appx. 831 (9th Cir. 2002); Carmickle, 533 F.3d at 1162-63.


**Step five determination**

Plaintiff contends that the ALJ erred by failing to incorporate all of her limitations in the hypothetical proffered to the vocational expert. Defendant responds that the ALJ's step five determination is supported by substantial evidence.

An ALJ may rely on the testimony of a vocational expert that is elicited with a hypothetical question that sets forth all the limitations of the claimant. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). The assumptions in the hypothetical question must be supported by substantial evidence. Id. The ALJ may not incorporate limitations or restrictions that are not supported by the record. SSR 96-8p. A hypothetical which fails to include all of a claimant's limitations does not constitute substantial evidence to support a finding that the claimant can perform jobs in the national economy. Magallanes, 881 F.2d at 756; Embrey, 849 F.2d at 423; Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001).

20 - REPORT AND RECOMMENDATION

At the supplemental hearing, the ALJ posed a hypothetical to the vocational expert (VE) in which an individual of 49, plaintiff's age at onset,[3] education, and prior work experience had no limitations on her work capacity, the VE testified the individual would be able to do the past relevant work identified by the VE at the hearing.  The ALJ then included the ability to occasionally lift 25 pounds, frequently 10 pounds; standing two hours, and no limitation as to sitting; rare use of a ladder, occasional with regard to the rest of the postural activities; environmental limitations to avoid concentrated exposure to extremes of heat and cold, fumes, et cetera.  (Tr. 285-86.)  The VE testified that the individual would not be able to do any of the past relevant work, but identified work in the competitive economy she could do:  cashier which is light and unskilled, with approximately 8,000 regionally and 100,000 in the national economy which would "accommodate the need to sit six hours during a day"; optical goods assembly which is sedentary and unskilled, with 4,500 regionally and 250,000 in the national economy. (Tr. 286.)

---

[3]    An individual of 49 years is categorized as a "Younger person."  20 C.F.R. §§ 404.1563(c), 416.963(c).  It appears that the ALJ should have used plaintiff's age at the time of the hearing and decision.  See Russell v. Bowen, 856 F.2d 81, 83-84 (9th Cir. 1988); Kellar v. Bowen, 848 F.2d 121, 122, 124 (9th Cir. 1988); Duyck v. Chater, 907 F. Supp. 338, 340 (D. Or. 1995); Patterson v. Bowen, 799 F.2d 1455, 1459-60 (11th Cir. 1986); SSR 83-10; 20 C.F.R. §§ 404.1563, 416.963.  Plaintiff was 52 years old at the time of the hearing and decision, a "Person closely approaching advanced age." 20 C.F.R. §§ 404.1563(d), 416.963(d).  It is unlikely that this age difference would have made a difference to the vocational expert's testimony, but she should have been able to consider it in her testimony.  Likewise, the ALJ referenced Medical-Vocational Rule 202.22 in his decision, which references a "Younger person," instead of Rule 202.15 which references a "Person closely approaching advanced age."

As discussed <u>supra</u>, the ALJ misstated the postural limitations found by Dr. Harris. Dr. Harris opined that plaintiff was limited to never climbing[4] and rarely crawling. (Tr. 205.)

Plaintiff first contends that the ALJ failed to incorporate any limitation regarding plaintiff's need to lie down during the day, citing Dr. Chapin's opinion that it is medically necessary for plaintiff to do so. As discussed <u>supra</u>, Dr. Chapin's opinion was not considered by the ALJ. While plaintiff testified that she had to lie down during the day, the court has found that the ALJ properly discounted her testimony.

As to the other work identified by the VE, plaintiff contends that the occupation of optical goods assembler does not meet the environmental limitations of either the ALJ's RFC or that of Dr. Harris because that occupation is usually performed in an industrial setting. The Dictionary of Occupational Titles indicates that category 7 Benchwork Occupations "is usually performed at a set position in a mill, plant, or shop, at a bench, worktable, or conveyor." <u>See</u> http://www.govtusa.com/dot/dot07a.html. Dr. Harris found that plaintiff was limited as to temperature extremes and as to fumes, odors, chemicals, gases, and stated that she was not a good candidate for work in an industrial setting. (Tr. 207.) The ALJ included in his RFC the limitation that plaintiff should avoid concentrated exposure to extremes of heat and cold, and to fumes, smoke, dust, etc. (Tr. 22.) It appears that the optical goods assembler does not meet the environmental limitations included in the hypothetical and found by Dr. Harris and the ALJ.

On this record, it appears that the ALJ's step five determination may not be supported by substantial evidence.

---

[4]   <u>See</u> note 1.

**Conclusion**

The court has found that the ALJ erred when he rejected the opinion of Dr. Harris without giving any reason but found the error harmless; the ALJ should have considered Dr. Chapin's opinion before making his decision, and that the reasons given by the Appeals Council for disregarding Dr. Chapin's opinion are not supported; and that the ALJ's step five determination may not be supported by substantial evidence. On this record, the court finds that a remand is warranted for the ALJ to consider Dr. Chapin's opinion and to correct other errors identified. See Harman, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be reversed and remanded for further proceedings consistent with this opinion.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by August 3, 2009. If objections are filed, any responses to the objections are due within 10 days, see* Federal Rules of Civil Procedure 72 and 6. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

//

23 - REPORT AND RECOMMENDATION

DATED this _17_ day of July, 2009.

MARK D. CLARKE
United States Magistrate Judge